IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RACHEL W. | § | |
| | § | |
| V. | § | C.A. No. _____ |
| | § | |
| BLUE CROSS BLUE SHIELD | § | |
| OF TEXAS | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

RACHEL W. files this Original Complaint asserting causes of action in law and equity for relief against Blue Cross Blue Shield of Texas.

## I.
## PARTIES

1. Plaintiff is a resident citizen of Fredericksburg, Virginia. She brings this action to recover benefits for her treatment of a severe mental illness. Pursuant to Federal Rule 5.2, she is referenced as Rachel W.

2. Defendant Blue Cross Blue Shield of Texas ("BCBS") is a domestic or foreign corporation licensed to do business and doing business in the State of Texas. BCBS is a division of Health Care Service Corporation, a mutual legal reserve company. All communications between Plaintiff and BCBS and actions taken by BCBS, as alleged herein, were approved or ratified by Health Care Service Corporation. BCBS may be served through its registered agent, Corporation Service Company, 211 East 7th St., Suite 620, Austin, TX 78701-3218, or wherever it may be found.

## II.
## JURISDICTION AND VENUE

1

3. This action against BCBS arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq*. This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

4. Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because Defendants maintain business activity in and are in this district.

5. Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration, at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail return receipt requested.

### III.
### STATEMENT OF FACTS

6. Plaintiff was at all relevant times a covered beneficiary under an employee welfare benefit plan created and administered by Trussway Manufacturing Plan. Plaintiff's spouse works for Trussway and was a covered participant under the Plan. As a beneficiary, Plaintiff was entitled to health care benefits under the Plan.

7. Trussway Manufacturing was the employer and plan sponsor of the Plan.

8. BCBS was the insurer for the Plan.

#### Policy Terms

9. Trussway issued two health insurance policies. The first Policy was Group No. 249648, and it had a $1,250 deductible. The second Policy was Group No. 249648, and it had a $2,500 deductible. Both Policies were intended to provide benefits "to

assist with you many of your health care expenses for Medically Necessary services and supplies".

10. The Policies provided both in-network and out-of-network benefits for medical treatment. These benefits applied to residential treatment center expenses.

11. The Policies established an allowable amount it would pay for eligible expenses incurred. The Policies permitted BCBS to establish allowable amounts for medically necessary expenses payable to both in-network and out-of-network medical providers.

12. The Policies provided coverage for behavioral health services on an inpatient and outpatient service basis. The Policies also provided coverage for serious mental illness on an inpatient and outpatient basis.

13. The Policies also provided that all services and supplies for which benefits would be available must be medically necessary as determined by BCBS. It also defined the term "medical necessity".

## Plaintiff's Medical History

14. Plaintiff suffers from a progressive, serious mental illness. She was diagnosed with bipolar disorder in March 2019.

15. In 2019, Plaintiff's mental illness manifested into long term suicidal ideation. She was admitted to various mental health facilities in Pennsylvania, Texas, Virginia, and Washington.

16. Before the Menninger Clinic ("Menninger"), Plaintiff was admitted to four different mental health facilities. One was an inpatient hospitalization program in

August 2019. She underwent numerous psychiatric evaluations and attempted various treatment plans. None were successful.

17. As the mother of 5 year old, 3 year old, and 7 month old children, it was vital for Plaintiff to seek mental health treatment that would keep her and her family safe.

### Treatment at Menniger

18. Plaintiff was admitted to Menninger on December 9, 2019 for treatment of her serious mental illness. The treatment involved, among other things, inpatient treatment and Electroconvulsive therapy ("ECT"). ECT is done under general anesthesia in which small electric currents are passed through the brain, intentionally triggering a brief seizure. ECT seems to cause changes in brain chemistry that can quickly reverse symptoms of certain mental health conditions.[1]

19. Plaintiff was discharged from Menninger on January 24, 2020.

### The Claim and Appeal

20. Before Plaintiff was admitted, Menniger called BCBS to submit a request for pre-authorization. BCBS initially approved the request for treatment.

21. However, BCBS later denied coverage for any treatment after January 3, 2020 on the basis that additional treatment was not medically necessary. In doing so, BCBS argued that Plaintiff could have been treated at partial hospitalization, a lower level of care.

22. On April 10, 2020, Plaintiff's spouse submitted an appeal to BCBS for denial of coverage for inpatient treatment and ECT for January 4-24, 2020. He also noted

---

[1] https://www.mayoclinic.org/tests-procedures/electroconvulsive-therapy/about/pac-20393894

      Plaintiff's severe untreatable depression for the eight months before her admission to Menniger, along with her long-term suicidal ideation.

23. Three days later, BCBS acknowledged receipt of the appeal.

24. During the appeal process, BCBS assigned Ebony X to manage the claim. Plaintiff's spouse left seven (7) phone messages. None were returned.

25. On June 9, 2020, BCBS denied the appeal. In doing so, it claimed that Plaintiff's appeal was a request for higher reimbursement for the behavioral health services at Menniger in the amount of $2,956.25. BCBS advised that all appeal rights were now exhausted.

26. In July 2020, the CEO and HR director of Trussway spoke with Plaintiff's spouse and discussed the possibility of "force paying" the claim. Before doing so, Trussway asked Plaintiff's spouse to contact USI Insurance Services ("USI"), the insurance agency that had obtained the BCBS policy for Trussway.

27. USI contacted BCBS's internal medical director, who deemed the claim an "emergency" and medically necessary. USI advised that it was engaged with BCBS in a "deeper, informal" review.

28. In February 2021, USI advised Plaintiff that the claim would be resolved. All that was necessary was for Menniger to send letters of medical necessity to BCBS.

29. Menniger sent the requested letters of medical necessity to Plaintiff's spouse, who then provided them to BCBS.

30. However, BCBS once again denied the claim in April 2021.

31. Both Trussway and USI believe Plaintiff's treatment for her entire stay at Menninger, including ECT, should be approved.

Plaintiff's Attempts to Documents from BCBS

32. Since April 2021, Plaintiff and her spouse have repeatedly tried to get more information from BCBS regarding the denial of her claims.

33. On May 28, 2021, Plaintiff's counsel sent a letter of representation to BCBS and asked for a number of documents relating to the claim. BCBS did not respond.

34. On July 23, 2021, Plaintiff's counsel sent a second request to BCBS for documents relating to the claim. BCBS did not respond.

35. On August 17, 2021, Plaintiff's counsel sent a third request to BCBS for documents relating to the claim. BCBS did not respond.

36. On September 1, 2021, Plaintiff's counsel sent a fourth request to BCBS for documents relating to the claim. A fifth request was sent a day later. BCBS did not respond.

37. During this time period, in more than 90 minutes of phone calls, BCBS either claimed 1) it never to have received any of the requests, 2) confirmed receipt of the requests but ignoring the requests, or 3) transferring the call to the Subrogation Department, which has no relevance to the claims.

38. On September 2, 2021, BCBS responded to Plaintiff's counsel, claiming that the member's identification number was missing or invalid.

39. On September 9, 2021, Plaintiff's counsel sent a copy of the front and back of Plaintiff's member ID card, along with a sixth request to BCBS for documents relating to the claim.

40. On September 14, 2021, BCBS responded to Plaintiff's counsel, stating that it had received the "appeal request". However, it refused to produce any documents.

BCBS's Incomplete Claim File

41. Three days later, BCBS sent what it referred to as the claim file directly to Plaintiff.

42. On December 22, 2021, Plaintiff's counsel advised BCBS that the claim file had been reviewed. Based on that review, the documents BCBS provided were woefully incomplete and caused concerns about BCBS' method of collecting and preserving documents related to the claim.

43. The claim file that BCBS provided totaled 312 pages. It contained the letters Plaintiff's counsel had sent to BCBS, an appeal letter, two insurance policies, and appeal denial letter. The claim file lacked the following:

   1. No medical records;
   2. No communication to or from Menninger;
   3. No claim notes;
   4. No claim activity logs;
   5. No telephone logs;
   6. No emails or other internal BCBS communication; and
   7. No full names and identities of all medically trained consultants, experts, or other professional that had a role in evaluating Plaintiff's claim.

44. The request for records was made pursuant to 29 C.F.R. §2560.503-1(h)(2)(iii), 29 C.F.R. §2560.503-1(m)(8)(I)-(iv), and the rules and regulations of the Department of Labor. Based on BCBS's response, the claim file was woefully incomplete. Plaintiff's counsel advised that if litigation was necessary, he would request discovery on the completeness of the claim file, BCBS' methods for compiling claim files, and why it failed to follow those guidelines in the claim.

45. Given the mounting ERISA violations in the claims, Plaintiff's counsel re-sent the documents that Plaintiff had previously sent to BCBS but were not found in BCBS' claim file:

      a.      Appeal Letter – Elizabeth Netherton, M.D.
      b.      Appeal Letter – Chester Wu, M.D.
      c.      BCBS – Menninger Claims Summary
      d.      Communication with Campbell – USI
      e.      Communication with Menninger
      f.      Medical Records – Menninger (1,650 pages)

46. In total, the documents totaled 154mb, far more than what BCBS had produced.

47. On January 6, 2022, BCBS wrote directly to Plaintiff, asking her to complete certain HIPAA authorizations.

48. Plaintiff had already sent the requested HIPAA authorizations to BCBS in September 2021. She sent them to BCBS a second time on January 8, 2022.

49. On January 13, 2022, BCBS again asked Plaintiff to complete certain HIPAA authorizations.

50. At present, BCBS has never answered any of Plaintiff's questions regarding the completeness of the claim file, why it failed to retain certain documents, or why it did not include certain documents in its file. It is unclear if BCBS will ever produce the complete claim file in this matter.

### Plaintiff Personally Liable for Medical Bills

51. Due to BCBS's denial of the claim, Plaintiff was forced to personally pay more than $62,000 to Menniger. This money should have rightfully been paid by BCBS.

52. Having exhausted her administrative remedies, Plaintiff brings this action to recover the benefits promised in the Plan and Policy.

## IV.
## CLAIMS & CAUSES OF ACTION

53. The Trussway Manufacturing Plan is governed by ERISA. 29 U.S.C. §1001, *et. seq.* Trussway Manufacturing is the plan sponsor and Plan Administrator. BCBS is the insurer for the Plan.

54. As Plan fiduciary, BCBS is obligated to handle claims for the benefit of the Plan and Plan beneficiaries, and to deliver the benefits promised in the Plan. It is also obligated as a fiduciary to conduct its investigation of a claim in a fair, objective and evenhanded manner.

55. BCBS's adjustment of Plaintiff's claim was instead biased and outcome oriented. This was partly reflected by its denial of Plaintiff's claim, even after being presented with evidence that her claim was covered, and her treatment was medically necessary. It was also reflected in BCBS's repeated use of incorrect and inappropriate guidelines for Plaintiff's medical condition or pursuant to Plan requirements.

56. BCBS's interpretation of the Plan was not legally correct. It was also contrary to a plain reading of the Plan language.

57. BCBS's interpretation of the Plan was contrary to that of the average Plan participant and policyholder. It was contrary to the common and ordinary usage of the Plan terms. Alternatively, the Policy language upon which BCBS based its denial decision was ambiguous. The ambiguous nature of those terms requires those terms be construed against BCBS and in favor of coverage for Plaintiff.

58. BCBS's denial was made without substantial supporting evidence. Its decision to deny Plaintiff's claim was instead based upon rank speculation and guesswork.

BCBS's denial decision was *de novo* wrong. Alternatively, it was arbitrary and capricious.

59. At all material times, BCBS acted on behalf of the Plan and in its own capacity as the Insurer and Claims Administrator.

60. BCBS's denial of Plaintiff's claim breached the terms of the Plan. This breach was in violation of 29 U.S.C. §1132(a)(1), entitling Plaintiff to the health insurance policy benefits to which she is entitled, along with pre-judgment interest on the amounts due and unpaid, all for which Plaintiff now sues.

## V.
## STANDARD OF REVIEW

61. The default standard of review for denial of a benefit claim is *de novo*. Where the Plan or Policy confers discretion on the Claims Administrator, an abuse of discretion standard of review may apply.

62. The Plan or Policy may contain a discretionary clause or language BCBS may contend affords it discretion to determine eligibility for benefits, to interpret the Policy, and determine the facts. BCBS's denial under this standard of review, if any, was an abuse of discretion. It was arbitrary and capricious.

63. If discretion applies, the Court should afford BCBS less deference in light of its financial conflict of interest. BCBS's conflict of interest is both structural and actual. Its structural conflict results from its dual role as the adjudicator of Plaintiff's claim and as the potential payor of that claim.

64. BCBS's actual financial conflict is revealed in the policies, practices, and procedures influencing and motivating claim delays and denials for financial gain.

BCBS's financial conflict is also revealed in the high return gained from the delay in payment or denial of claims.

65. Each of these grounds, on information and belief, was a motive to deny Plaintiff's claim, along with the delay in payment or denial of claims of other BCBS policyholders and claimants.

66. In light of its financial conflict, BCBS should be given little or no discretion in its claim decision.

67. Alternatively, the standard of review of this claim should be *de novo,* affording BCBS no discretion in its interpretation of the terms of the Policy and Plan or in its factual determinations. Both factual conclusions and legal determinations are reviewed *de novo* by the Court. *Ariana v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018).

68. The Plan or Policy was delivered in Texas and is subject to the laws of that jurisdiction. Accordingly, Texas law applies under the ERISA savings clause. Texas banned the use of discretionary clauses in insurance policies issued in this state. TEX. INS. CODE §1701.062; 28 Tex. ADMIN. CODE §3.1202. Accordingly, review of Plaintiff's claim and BCBS's claims handling conduct, both in its interpretation of the Policy and the Plan, and in its determination of the facts, should be *de novo*.

## VI.
## REQUEST FOR PREJUDGMENT INTEREST & AN ACCOUNTING

69. Plaintiff requests, in addition to the amount of benefits withheld, prejudgment interest on any such award. She is entitled to prejudgment interest as additional compensation, and pursuant to Texas Ins. Code §1103.104, or on principles of equity.

70. The Plan and Policy do not contain a rate of interest payable on the benefit amount wrongfully withheld. Resort must be had to Tex. Ins. Code §1103.104(c). Plaintiff requests an accounting in order to determine the amount earned on the funds that should have rightfully been paid to her in accordance with Ins. Code §1103.104(c).

## VII.
## CLAIM FOR ATTORNEYS FEES & COSTS

71. Plaintiff seeks an award of her reasonable attorneys' fees incurred and to be incurred in the prosecution of this claim for benefits. She is entitled to recover those fees, together with her costs of court, pursuant to 29 U.S.C. §1132(g).

## VIII.
## PRAYER

Rachel W., Plaintiff, respectfully prays that upon trial of this matter or other final disposition, this Court find in her favor and against BCBS, and issue judgment against BCBS as follows:

A. That Defendant pay to Plaintiff all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon and as allowed by law and equitable principles;

B. That Defendant pay all reasonable attorney's fees incurred and to be incurred by Plaintiff in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter; and

C. All such other relief, whether at law or in equity, to which Plaintiff may show herself justly entitled.

Respectfully submitted,

By: _____/s/ Amar Raval_____
      Amar Raval, TBA #24046682
      S.D. No. 619209
      Berg Plummer Johnson & Raval LLP
      3700 Buffalo Speedway, Suite 1150
      Houston, TX 77098
      (713) 526-0200
      (832) 615-2665 (Fax)
      araval@bergplummer.com

      ATTORNEYS FOR PLAINTIFF